E. Craig Daue, Esq.
BUXBAUM, DAUE & FITZPATRICK, PLLC
228 West Main, Suite A
P.O. Box 8209
Missoula, MT 59807
Telephone:  (406) 327-8677
Fax No.:  (406) 829-9840

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| PATSY MARSH, | ) |
|  | ) Cause No.  CV-08-157-M-DWM |
| Plaintiff, | ) |
|  | ) COMPLAINT |
| -vs- | ) |
|  | ) |
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff, through her attorneys, alleges:

1. At all times pertinent to this case, Plaintiff has been a citizen of the State of Montana.

2. This Court has jurisdiction over this case pursuant to the Federal Tort Claims Act, 28 U.S.C. 2671, *et seq.*, in that the claim arises from the Government's conduct in

providing health care services at Partnership Health Center ("PHC"), in Missoula, Montana. PHC is a Federally Qualified Health Center in Missoula, Montana. The negligent acts and omissions that are the subject of this action were committed by the Government's agents and employees while acting within the course and scope of their employment. This Court has exclusive jurisdiction over tort claims brought against the United States pursuant to 28 U.S.C. § 1346(b).

3.  The Plaintiff's claim was filed in writing with the Department of Health and Human Services ("DHHS") on November 8, 2007, and acknowledged by DHHS on December 18, 2007. More than six months have elapsed since the claim was filed and acknowledged, and the United States has not accepted or denied the claims. Accordingly, Plaintiff has appropriately exhausted her administrative remedies.

4.  The acts and omissions giving rise to this claim occurred in Missoula County, Montana, which is within this judicial district. Venue is proper in this Court under 28 U.S.C. §§ 1391(e) and 1402(b). Venue also is proper in this division under this Court's Local Rule 1.11 and Mont. Code Ann. § 25-2-122 because Defendant United States resides in Missoula County and each of the other counties within the Missoula Division of the United States District Court for the District of Montana.

5.  Patsy Marsh is a 68-year-old lady who lives with her husband, William Marsh, in Plains, Montana. She became a patient of Partnership Health Center, a Federally Qualified Health Center in Missoula, Montana, on June 12, 2002. Thereafter, she received her primary

medical care at PHC.

    6.    Although Patsy was 63 years old when she became a PHC primary care patient, PHC never recommended any colorectal cancer screening to her.

    7.    Sometime before February 13, 2004, Patsy noticed blood in her stools. Patsy saw PHC physician, Dr. Michael Curtis, on February 13, 2004. At that visit, she told Dr. Curtis about the blood in her stools, but he did nothing to follow up on it nor did he indicate he was concerned about it. At the time of that visit, Patsy was also having signs and symptoms that were concerning for possible heart problems.

    8.    On February 13, 2004, Dr. Curtis referred Patsy to Dr. W. Stan Wilson (a cardiologist in Missoula, Montana) for work up of her possible heart problems. Patsy saw Dr. Wilson on February 16, 2004. Dr. Wilson's records of that visit include the following statements:

> Bright red blood per rectum recently on at least 1 or 2 occasions following a dose of Milk of Magnesia for constipation. Hasn't yet been worked up and we will leave this to Dr. Curtis.
>
> . . .
>
> GI work up for rectal bleeding per Dr. Curtis.

    9.    Dr. Wilson sent a copy of his February 16, 2004, office note and the results of laboratory studies and stress echocardiogram to Dr. Curtis shortly after February 16, 2004.

    10.    The PHC records acknowledge that the documents sent by Dr. Wilson were received by PHC on or before March 10, 2004.

11.     Patsy returned to Dr. Wilson on April 22, 2004, for a heart catheterization procedure. Dr. Wilson's History and Physical report of that date includes the following statement: "Recent rectal stool staining, probably hemorrhoids?, work up completed."

12.     A copy of Dr. Wilson's April 22, 2004, History and Physical report was sent to Dr. Curtis shortly after that date. No work up for the rectal bleeding had, in fact, been performed by April 22, 2004.

13.     Although PHC knew no later than March 10, 2004, that Patsy had rectal bleeding, it failed to investigate the cause of the bleeding and failed to perform any screening for colorectal cancer.

14.     Patsy returned to PHC on May 19, 2004, to follow up on her medical care. At that visit, she again mentioned the blood in her stool to Dr. Curtis. The assistant in the examining room with Patsy and Dr. Curtis asked Dr. Curtis if he was going to work up the blood in Patsy's stool. No work up was done.

15.     Patsy had her annual examination at PHC on September 29, 2004. Again no colorectal cancer screening was performed or recommended, and no follow up was done for the reports of rectal bleeding in March and April of 2004.

16.     In Fall 2006, Patsy saw a licensed healthcare practitioner (most likely a Nurse Practitioner or Physicians' Assistant) for a possible urinary tract infection and some trouble with constipation. Patsy mentioned to the practitioner that she had been having blood in her stools. The practitioner referred her for colonoscopy and on November 9, 2006, Dr. Elliott

Morris (a gastroenterologist in Missoula, Montana) attempted a colonoscopy. Dr. Morris could only advance the scope about 35 cm from the anal verge due to an obstructing lesion. Biopsies of the lesion were taken, showing invasive moderately differentiated adenocarcinoma.

17. The next day, November 10, 2006, an exploratory laparotomy was done and Patsy's sigmoid colon was removed. The pathology examination showed adenocarcinoma, that had spread to her liver and lymph nodes. Patsy's cancer was AJCC stage IV (T3, N2, M1).

18. The doctors began a course of aggressive chemotherapy, but Patsy's body couldn't tolerate the chemotherapy agent. She became very ill and had to be admitted to the hospital for two weeks. Finally, in June of 2007, Patsy was admitted to Sacred Heart Medical Center in Spokane, Washington for resection of the cancerous portion of her liver.

19. The tumor in Patsy's colon was, more likely than not, present on June 12, 2002, when she first became a PHC patient. If appropriate colorectal cancer screening had been performed on or after June 12, 2002, Patsy's cancer would likely have been discovered.

20. The U.S. Preventive Services Task Force ("USPSTF") was convened by the U.S. Public Health Service in 1984, and since 1998 has been sponsored by the Agency for Healthcare Research and Quality ("AHRQ") of the U.S. Department of Health and Human Services. "The USPSTF conducts rigorous, impartial assessments of the scientific evidence for the effectiveness of a broad range of clinical preventive services, including screening,

counseling, and preventive medications. Its recommendations are considered the 'gold standard' for clinical preventive services." See Website, Agency for Healthcare Research and Quality, Rockville, MD. http://www.ahrq.gov/clinic/uspstfab.htm.

21.     Beginning in 1996, a broad consensus evolved among U.S. and foreign healthcare organizations involved in the screening, diagnosis, and treatment of colorectal cancer. *A Quarter Century of Colorectal Cancer Screening: Progress and Prospects*, Journal of Clinical Oncology, Vol 19, No. 18s (September 15 Supplement), 2001: pp. 6s-12s. By 2001, the USPSTF, the American Cancer Society, The American Academy of Family Physicians, The American Gastroenterological Association, The World Health Organization, the Australian Task Force, and the European Screening Group had all adopted guidelines recommending regular screening of people over the age of 50 for colorectal cancer. In addition to recommending screening of asymptomatic people over the age of 50, by 2001 virtually all medical authorities agreed that a patient showing signs, such as rectal bleeding, that may indicate the presence of colorectal cancer should undergo tests specifically targeted at detecting the presence of such cancer.

22.     PHC failed to satisfy the standard of care and, therefore, was negligent in the following respects:

a.      As Patsy's primary medical care provider, it repeatedly failed to recommend colorectal cancer screening to a patient over 50 years of age;

b.      It failed to perform a work up for Patsy's rectal bleeding that Dr. Wilson

       reported to PHC in February and again in April of 2004;

c.       It failed to investigate the cause of Patsy's rectal bleeding that she reported directly to PHC personnel.

23.       PHC's negligence caused a substantial delay in the diagnosis of Patsy's cancer, increased the harm and risk of harm to her from the cancer, and reduced her opportunity for successful treatment and longer survival.

24.       PHC's negligence caused Patsy physical pain, emotional anguish, medical expenses, travel expenses, and other damages.

25.       Patsy remains at substantial risk for early death from her cancer, and should that occur, she and her heirs will be entitled to wrongful death and survival damages pursuant to Montana law. In that event, a motion will be made to amend this Complaint.

WHEREFORE, Plaintiff seeks judgment against the Defendant as follows:

1.       For a judgment in such amounts as shall be proven at trial;

2.       For costs of this action;

3.       For such other relief as the Court deems just.

Dated this 4th day of November, 2008.

                            /s/ E. Craig Daue
                            E. Craig Daue
                            BUXBAUM, DAUE & FITZPATRICK, PLLC
                            *Attorneys for Plaintiff*